Richard P. McElroy (PA I.D. No. 03599)
Jeffrey C. McElroy (PA I.D. No. 87091)
**McElroy & Associates, LLP**
202A North Monroe Street
Media, PA 19063
610-566-8301
610-566-8305 (Fax)

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VAI, INC., <br> 317 Drummers Lane <br> Wayne, PA 19087 <br>           Plaintiff, <br><br> v. <br><br> MILLER ENERGY RESOURCES, INC., f/k/a <br> MILLER PETROLEUM, INC. <br> 3651 Baker Highway <br> Huntsville, TN 37756, and <br><br> COOK INLET ENERGY, LLC <br> 601 West Fifth Avenue, Suite 310 <br> Anchorage, AK 99501 <br>           Defendants. | CIVIL ACTION NO. <br><br><br><br><br><br><br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

VAI, Inc. ("VAI"), through its undersigned attorneys for its complaint hereby alleges as follows:

1.     Plaintiff is VAI, a Delaware corporation with its place of business located at 317 Drummers Lane, Wayne, Pennsylvania.  VAI has been engaged in the business of providing financial advisory and consulting services to companies seeking to acquire or

divest businesses, restructure, secure financing or investment capital, and other similar business transactions.

2. Defendant, Miller Energy Resources, Inc., formerly known as Miller Petroleum, Inc., ("Miller"), is a Tennessee corporation with its principal place of business at 3651 Baker Highway, Huntsville, Tennessee. Miller is engaged in the operation of oil and natural gas wells in Tennessee, and beginning in 2009 became engaged in the production and sale of oil and gas in the Cook Inlet area of Alaska near Anchorage.

3. Defendant, Cook Inlet Energy, LLC ("CIE"), is an Alaska limited liability company with its principal place of business at 601 West Fifth Avenue, Suite 310, Anchorage, Alaska. CIE is a subsidiary of Miller and is engaged in the production of oil and gas, the operation of oil and gas wells, and the development of oil and gas producing properties located in the Cook Inlet area of Alaska.

## JURISDICTION AND VENUE

4. This action is one between citizens of different states and the matter in controversy exceeds the sum of $75,000. Jurisdiction of this Court exists by virtue of diversity of citizenship, 28 U.S.C. § 1332.

5. Miller and CIE are subject to personal jurisdiction of the Court because a substantial part of the events giving rise to the claim occurred in this judicial district and each of the defendants entered into contracts in Pennsylvania and in this judicial district. The contacts of Miller and CIE in Pennsylvania are sufficient to subject each of them to personal jurisdiction in Pennsylvania. Accordingly, venue is established under 28 U.S.C. § 1391 (a) and (c).

**FACTUAL BACKGROUND**

6.     Prior to December, 2009, Pacific Energy Resources, Ltd. ("Pacific"), a company located in California, was the owner and operator of, *inter alia*, certain oil and gas production assets located in the Cook Inlet region of Alaska.

7.     On March 8, 2009, Pacific filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

8.     At about the time of Pacific's filing of the bankruptcy petition in March 2009, the managers of Pacific's Alaskan operations, led by David M. Hall ("Hall"), Walter J. Wilcox ("Wilcox") and Troy Stafford ("Stafford"), formed CIE for the purpose of acquiring some of Pacific's Alaskan oil and gas assets in the Cook Inlet region.

9.     Those oil and gas assets were located in the Upper Cook Inlet as shown on Exhibit 1 attached to the complaint. Those assets include the West McArthur River oil field, the West Foreland natural gas field, the Osprey offshore platform, and related Kustatan production facility (pictures of the Osprey Platform, Kustatan Production Facility and the West McArthur River Unit are attached as Exhibit 2). These assets have been referred to as the "Alaska Group 1 Assets" and that term may be used hereafter from time to time in reference to those assets.

10.    VAI, which at the time was located in West Conshohocken, Pennsylvania, was contacted by Stafford on behalf of CIE, Hall, Wilcox and himself to determine whether VAI could assist CIE, Hall, Wilcox and Stafford in the acquisition of Pacific's Cook Inlet oil and gas assets. Following a period of due diligence, VAI through its President, Thomas X. Flaherty, agreed to be of assistance.

11. On or about June 12, 2009, CIE and VAI entered into an Engagement Agreement, pursuant to which VAI on an exclusive basis would provide financial advisory services to CIE, focusing on the acquisition of certain oil and gas assets owned by Pacific in Chapter 11 proceedings. A true and correct copy of the Engagement Agreement is attached hereto as Exhibit 3. The Engagement Agreement was entered into in Pennsylvania and the laws of the Commonwealth of Pennsylvania apply under Section G of the Agreement.

12. The services provided by VAI under the Engagement Agreement included among other things financing advice, preparation of an information memorandum, identification of and dealing with potential investors or lenders, solicitation of term sheets, arranging site visits and otherwise assisting CIE, its attorneys and accountants through closing of any transactions. (Section A of the Engagement Agreement).

13. VAI's fee under the Engagement Agreement was a combination of (i) initial and monthly fees; (ii) fees for any financing or joint venture (as defined in the Engagement Agreement) contingent upon closing or consummation of any financing or joint venture, and (iii) warrants or stock rights, also contingent upon closing. (Section B of the Engagement Agreement).

14. VAI did all the things it was required to do under the Engagement Agreement. VAI identified a number of potential investors and successfully generated interest by such investors in participating in the acquisition of the Cook Inlet oil and gas assets of Pacific. One of the potential investors or joint venture partners was Miller and Miller expressed an interest in participating in the effort to acquire the Alaska Group 1 Assets from Pacific out of bankruptcy.

15. Consequently, on September 8, 2009, a Memorandum of Understanding was entered into by CIE, Miller and VAI, pursuant to which CIE and VAI assigned to Miller rights to acquire the Alaska Group 1 Assets and CIE and VAI were to assist Miller in maximizing the value of such assets and the profitability of Miller.  A true and correct copy of the Memorandum of Understanding is attached hereto as Exhibit 4.

16. In return, Miller agreed in the Memorandum of Understanding to facilitate the financing of the acquisition of the Alaska Group 1 Assets; to issue to CIE and VAI 3,500,000 warrants for the stock of Miller exercisable at $.01 per share; enter into employment agreements with CIE employees, including Hall and Wilcox; and pay $200,000 in cash to CIE and VAI.  All of these obligations of Miller were contingent on CIE, or its assignee and/or Miller being designated as the successful purchaser of the Alaska Group 1 Assets.

17. On December 10, 2009, largely due to the efforts and work of VAI under the Engagement Agreement and the Memorandum of Understanding, Miller entered into transactions which resulted in it, through CIE, acquiring Pacific's Alaska Group 1 Assets out of Pacific's Chapter 11 bankruptcy.

18. On that date, Miller acquired 100 percent of the membership interests in CIE.  As consideration, Miller issued to the owners/sellers warrants to purchase 3,500,000 shares of common stock of Miller exercisable over four years at prices ranging from $.01 to $2.00 per share, and to pay $250,000 as reimbursement for certain expenses.  The sellers, Hall, Wilcox and Stafford, continued as employees of CIE, which became a Miller subsidiary.  VAI received nothing.

19. Also on December 10, 2009, CIE and Miller acquired Pacific's Alaska Group 1 Assets out of bankruptcy for $2.25 million and CIE provided $2.22 million for certain obligations that had to be satisfied in order to operate the Alaskan oil and gas production facilities.

20. The value of the assets acquired by CIE and Miller far exceeded the purchase price. Miller in its Form 10-K for the fiscal year ending April 30, 2010 filed with the Securities and Exchange Commission, stated that the Alaskan oil and gas assets it acquired were valued at more than $479 million, including $215 million in "proven" energy reserves, $122 million in "probable" energy reserves and $31 million in "possible" energy reserves. Also included in the purchase was 602,000 acres of oil and gas leases, making Miller the largest lessee of Alaska-owned oil and gas property.

21. As a result of the purchase of the Alaska Group 1 Assets, made possible through the efforts of VAI, the price of Miller's common stock then being traded on the NASDAQ Global Stock Market rose from $.20 per share on April 30, 2009 to $5.76 per share on April 30, 2010. Miller's stock is now listed on the New York Stock Exchange.

22. In Miller's 2010 Annual Report, Scott M. Boruff, Chief Executive Officer of Miller, told his shareholders that the acquisition of Pacific's Alaska Group 1 Assets would provide the "primary building blocks" for the future of Miller and made Miller one of the "fastest growing energy companies in the United States."

23. Despite the unqualified success of VAI's efforts and the enormous financial benefits VAI secured for Miller and CIE, neither Miller nor CIE have fulfilled their obligations under their Agreements with VAI, except the payment by CIE of an initial fee of $25,000 provided for in the Engagement Agreement in June 2009.

## COUNT ONE
## BREACH OF CONTRACT AGAINST CIE AND MILLER

24.     The allegations of Paragraphs 1 through 23 are incorporated in this Count by reference as though set forth at length.

25.     Prior to the closing of CIE's and Miller's acquisition of Pacific's Alaska Group 1 Assets, VAI sent an invoice for the balance of its fees under the Engagement Agreement and Memorandum of Understanding.  A true and correct copy of the invoice is attached hereto as Exhibit 5.  That invoice was sent to Messrs. Hall and Wilcox of CIE and required the payment to VAI of $202,184.97, plus warrants for 1,750,000 shares of Miller stock exercisable over a four-year period at $.01 per share.  The number of warrants set forth in the invoice represented one-half of the 3.5 million warrants that Miller was obliged to issue to CIE and VAI under the Memorandum of Understanding.

26.     Instead of paying the amounts due to VAI under the invoice and the Memorandum of Understanding, Miller issued 3,500,000 warrants to Hall, Wilcox and Stafford.  CIE has likewise failed to pay VAI any portion of the fees that are due under the Engagement Agreement, the Memorandum of Understanding and the invoice.

27.     Miller has on several occasions since the date of the invoice in November 2009, acknowledged the obligations owed to VAI, both in writing and by oral representations made by Miller's CEO, Scott Boruff.  Nonetheless, the obligations and the invoice remain unpaid.

28.     The failure of CIE and Miller to pay the fees due VAI under the Engagement Agreement and the Memorandum of Understanding constitutes a breach by CIE of both contracts and a breach by Miller of the Memorandum of Understanding.

29. As a result, VAI has suffered damages for (i) lost fees due under the Engagement Agreement; (ii) out-of-pocket costs and expenses to be reimbursed by CIE and Miller, but which have not been reimbursed; and (iii) lost fees in the form of 1,750,000 warrants for the common stock of Miller exercisable at $.01 per share for a four-year period after the warrants are issued, or, in the alternative, the fair value of such warrants, which currently is approximately $9,700,000.

## COUNT TWO
## UNJUST ENRICHMENT AGAINST CIE AND MILLER

30. The allegations of Paragraphs 1 through 29 are incorporated in this Count by reference as though set forth at length.

31. Based upon the promises of CIE and Miller that they would compensate VAI for its services if they were able to acquire successfully Pacific's Alaska Group 1 Assets, VAI devoted nearly all of its efforts, time and resources over a six-month period in 2009, culminating in the successful acquisition by CIE and Miller of those extraordinarily valuable oil and gas assets in the Cook Inlet region of Alaska owned by Pacific.

32. The purchase of Pacific's Alaska Group 1 Assets through VAI's efforts and assistance resulted in CIE and Miller acquiring for $2.25 million assets valued at $479 million. The acquisition led directly to shareholders and warrant holders of Miller being able to reap the benefit of a twenty-nine-fold increase in the price of their stock and the value of their warrants following the acquisition.

33. CIE, Miller and VAI had intended that, if the transaction were closed, VAI would share in the benefits that could flow from the transaction that VAI was instrumental in bringing to fruition. However, CIE and Miller and their officers have

attempted to keep all of the benefits for themselves and as a result have unjustly enriched themselves at the expense of VAI.

34. By reason of their unjust enrichment, VAI has been damaged by loss of fees, out-of-pocket expenses, and warrants for the common stock of Miller exercisable at $.01 per share over a four-year period.

## COUNT THREE
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST CIE AND MILLER

35. The allegations of Paragraphs 1 through 34 are incorporated in this Count by reference as though set forth at length.

36. The actions of CIE and Miller constitute a breach of the implied covenant of good faith and fair dealing which has caused damage to VAI for lost fees, out-of-pocket expenses, and warrants for the common stock of Miller exercisable at $.01 per share over a four-year period.

WHEREFORE, plaintiff VAI, Inc., hereby prays the Court:

(a) To enter judgment in its favor and against defendants Cook Inlet Energy, LLC and Miller Energy Resources, Inc.;

(b) To award damages in favor of plaintiff and against defendants for the losses suffered by plaintiff, plus interest;

(c) To order defendant Miller Energy Resources, Inc., to issue to plaintiff VAI, Inc., 1,750,000 warrants for the common stock of Miller Energy Resources, Inc., exercisable at $.01 per share over a four-year period following the issue

of such warrants; or in the alternative, to award damages in an amount equal to the value of such warrants;

      (d)    To award plaintiff costs of suit; and

      (e)    To award such other relief as the Court deems just and proper.

**MCELROY & ASSOCIATES, LLP**

By: /s/ Richard P. McElroy
Richard P. McElroy (PA I.D. #03599)
*rmcelroy@themcelroyfirm.com*
Jeffrey C. McElroy (PA I.D. #87091)
*jmcelroy@themcelroyfirm.com*
202A North Monroe Street
Media, PA 19063
610.566.8301
Fax 610.566.8305

*Attorneys for Plaintiff, VAI, Inc.*